IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 27, 2005 Session

## STATE OF TENNESSEE v. JOSHUA PARKER

**Appeal from the Criminal Court for Cocke County**
**No. 9234   Ben W. Hooper, II, Judge**

---

**No. E2004-02374-CCA-R3-CD - Filed January 6, 2006**

---

The Cocke County grand jury indicted the defendant, Joshua Parker, on one count of aggravated sexual battery. Following a jury trial, the defendant was found guilty as charged. He was sentenced to twelve years to be served at 100% as a Range II multiple offender. The defendant appeals this conviction. He argues that the evidence was insufficient to support his conviction and that the State committed prosecutorial misconduct in its closing argument. We have determined that the evidence was insufficient to support a conviction for aggravated sexual battery. Therefore, we reverse and dismiss the judgment of conviction for that offense. However, the evidence is sufficient to support a conviction for attempt to commit aggravated sexual battery and we therefore reduce the conviction to that of attempted aggravated sexual battery, and remand for entry of judgment to that effect and re-sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Reversed and Remanded for Resentencing.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Keith E. Haas, Assistant Public Defender, for the appellant, Joshua Parker.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; and Al Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On July 24, 2003, A.G.[1], was visiting her friend, April Ledford at her house on Hilltop Drive in Cocke County. A.G. was twelve at the time. The girls went across the street to visit Michelle Whittington who lived with the defendant and her baby girl. Ms. Whittington was sick when the

---

[1]It is the policy of this Court to refer to minor victims by their initials.

girls visited. April left to get some medicine for Ms. Whittington. Ms. Whittington was "conked out" after April left. While April was gone, the defendant took A.G. to a back room and tried to push her down onto the bed. A.G. fought back, but the defendant was successful in pushing her down onto the bed. While he was lying on top of A.G., the defendant had one hand over her mouth and also tried to unbutton her pants. He touched A.G. "close to [her] private," but was unable to get her pants down. The defendant then got up to see if April had returned. He told A.G. to stay in the back room. A.G. got up and ran out the back door.

Once A.G. was outside, she saw April. The girls returned to April's house. After about an hour, the girls returned to the defendant's trailer, but only after April assured A.G. that the defendant was not there. Shortly after they arrived at the defendant's trailer, he returned. The defendant began screaming at A.G. and pointed his finger in her face. He told her that he would kill her, but Ms. Whittington, the baby, and April were keeping her alive. A.G. tried to leave, but the defendant jumped in front of the door. Ms. Whittington was on the couch and made no attempt to help A.G. A.G. and April returned to April's house and told Mary Ledford[2], April's mother what happened at the defendant's trailer. April told her mother and asked her to call the police. However, saying she did not want to become involved, Mrs. Ledford did not call the police. The next day, the girls told April's father, Junior Ledford. He called the police and Detective Bryan Murr came to interview A.G. and April.

Detective Murr spoke with both the girls. April wrote out a statement that both girls reviewed. A.G. told Detective Murr about the defendant getting on top of her and attempting to take off her jeans, but this information was not included in the written statement taken during the interview with Detective Murr.

April Ledford stated that she and A.G. went to the defendant's trailer on July 24, 2003 to visit Ms. Whittington. April left the trailer to go to her house and get some medicine for Ms. Whittington. When April was returning to the defendant's trailer she saw A.G. behind the trailer. A.G. looked nervous. The girls went for a walk, and A.G. told April that the defendant tried to "get down her pants." The girls then returned to the defendant's trailer because April saw him leave. The defendant came home while A.G. and April were in the trailer. The defendant then told A.G. that the only thing keeping her alive was April, Ms. Whittington and the baby. A.G. tried to leave, but the defendant got in front of her and began to yell at her. A.G. got behind April, who then held onto A.G. The defendant went to the back of the trailer, and the girls left. When they returned to April's house, she told her mother to call the police. Her mother refused saying that she was not going to get in the middle of it. April talked to her father the next day, and he called the police. Detective Murr spoke with A.G. and April at the same time. April actually wrote out the statement.

Mary Ledford, April's mother, recalled that A.G. and April returned from the defendant's trailer. April asked Ms. Ledford to call the police because Ms. Whittington told them to call the police. Ms. Ledford did not call the police.

---

[2] Mary Ledford is also referred to as Mary Hale in the record.

Detective Murr interviewed A.G. and April after the incident in question. April wrote out the statement because Detective Murr has found that juvenile girls find it easier to write out details about a sexual assault, rather than talk about them. Although the statement did not include that the defendant put his hand over A.G's mouth and tried to get her pants down, Detective Murr remembered those details from the interview. Detective Murr also spoke with Ms. Whittingham. She did not tell Detective Murr what happened. Based upon his investigation, Detective Murr obtained an arrest warrant for the defendant.

Michelle Whittingham, the defendant's girlfriend testified on behalf of the defendant. On that day in July, A.G. and April came over to visit. Ms. Whittington was sick that day. She was on the couch with the defendant. April went to her house to get medicine for Ms. Whittington. April gave the medicine to the defendant, who then gave it to Ms. Whittington. While April was gone, A.G. stayed at the trailer and never left the living room. The defendant never left the living room. Ms. Whittington told Detective Murr what the girls had told her. She said that she slept off and on the day of the incident. However, the defendant never got up from the couch. Ms. Whittingham was sure because her feet were across the defendant's lap. If he had gotten up, she would have awakened. She stated that the defendant had been drinking that day.

Detective Murr was recalled by the State to testify as a rebuttal witness. Detective Murr testified that Ms. Whittingham stated that she was asleep at the time of the incident.

On November 13, 2003, the Cocke County Grand Jury indicted the defendant for aggravated sexual battery. A jury trial was held May 4, 2004. At the conclusion of the trial, the jury found the defendant guilty of aggravated sexual battery. The trial court sentenced the defendant to twelve years as a Range II multiple offender with a release eligibility of 100%. The defendant's motion for new trial was denied by the trial court. The defendant now appeals his conviction.

## ANALYSIS

The defendant argues two issues on appeal: (1) whether there was sufficient evidence to support his conviction for aggravated sexual battery; and (2) whether the State committed prosecutorial misconduct in the closing argument resulting in prejudice to the defendant.

### Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence.

Id.  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75.  In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  See Tuggle, 639 S.W.2d at 914.  As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence."  Matthews, 805 S.W.2d at 779.  Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Aggravated sexual battery is "unlawful sexual contact with a victim by the defendant . . . accompanied by any of the following circumstances: . . . (4) The victim is less than thirteen (13) years of age."  Tenn. Code Ann. § 39-13-504(a)(4).  Sexual contact includes, "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification . . . ."  Tenn. Code Ann. § 39-13-501(6).  Intimate parts includes, "the primary genital area, groin, inner thigh, buttock or breast of a human being."  Tenn. Code Ann. § 39-13-501(2).

After a thorough review of the record, we have determined that the evidence is indeed insufficient to support the defendant's conviction of aggravated sexual battery.  The victim's testimony was the only direct evidence presented recounting the incident in question.  She stated that the defendant pushed her down onto the bed, covered her mouth with one hand and tried to unbutton her pants with the other hand, touching her "close to my private."  As we stated above, intimate parts, as used in Tennessee Code Annotated section  39-13-501(6), includes, "the primary genital area, groin, inner thigh, buttock or breast of a human being."  Tenn. Code Ann. § 39-13-501(2).  The victim's description of the area as "close to my private" is not specific enough to support a conviction.  A.G. made this statement while describing the defendant's attempt to unzip her pants.  She was never asked to clarify what she meant by "near my private".  Under these circumstances we conclude the evidence is insufficient to support a conviction for aggravated sexual battery.

However, the trial court also instructed on the lesser-included offenses of attempt to commit aggravated sexual battery and assault.  We have set out the elements and definitions for aggravated sexual battery above.  Criminal attempt is defined at Tennessee Code Annotated section 39-12-101:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

. . . .

-4-

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tennessee Code Annotated section 39-12-101(a)(3) & (b).

In this situation, the question is whether the defendant's "entire course of action is corroborative of the intent to" intentionally touch the victim's intimate parts or the clothing immediately covering her intimate parts. This Court has addressed a similar question in other cases. In State v. Delbert G. Mosher, No. 01C01-9807-CC-00320, 1999 WL 820871 (Tenn. Crim. App. at Nashville, Oct. 13, 1999), this Court stated that the appellant's licking the inside of the victim's knee, constituted a substantial step toward attempt to commit aggravated battery even though the knee is not an intimate body part. Delbert G. Mosher, 1999 WL 820871 at *2. In State v. Jerry D. Reece, No. 01C01-9601-CC-00021, 1996 WL 529995 (Tenn. Crim. App. at Nashville, Sept. 19, 1996), this Court stated that the appellant's attempts to reach down one victim's nightshirt, his attempt to pull up the shirt of the other victim, his licking the arm of one victim and then leaning over a victim's lap and "waggl[ing] his tongue back and forth like a dog" constituted substantial steps toward committing attempt to commit aggravated sexual battery. Jerry D. Reece, 1996 WL 529995 at * 2.

The evidence at the defendant's trial showed that the defendant touched the victim "close to [her] private part." As in the both the cases cited above, the defendant did not touch the victim on a defined intimate part, but we concluded that such touching constituted a substantial step. In Jerry D. Reece, the appellant attempted to reach down the victim's shirt, much as the defendant in the case at hand attempted to undo and reach down the victim's pant. Clearly the defendant's touching the victim "close to her private part" while holding her down constitutes a substantial step toward the completion of aggravated sexual battery. For this reason, we conclude that the evidence is sufficient to support a conviction for the lesser-included offense of attempt to commit aggravated sexual battery. Therefore, we reduce the conviction to the lesser-included offense and remand for resentencing.

**Prosecutorial Misconduct**

We address the defendant's other issue to facilitate review should the State successfully appeal to our supreme court. The defendant argues that the State's attorney misstated the facts when he stated that the victim testified that the defendant "tried to get her pants unzipped." However, the defendant neither objected to this statement nor raised it in his motion for new trial. When a prosecutor's statement was not the subject of a contemporaneous objection, the issue is waived. Tenn. R. Crim. P. 33 and 36(a). State v. Thornton, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999);

State v. Green, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). Therefore, this issue is waived with respect to this particular statement of the State's closing argument.

The defendant also argues that a portion of the State's argument constituted prosecutorial misconduct. The complained of portion is as follows:

> Ladies and gentlemen, don't you be fooled, don't you be misled. And you're not. You won't be. Twelve-year-old girls don't run and tell anybody everything that they do, whatever happens to them. And you know as well as I do, ladies and gentlemen, I submit to you, that boys and girls have held it in themselves and not told about being sexually molested for years and years and years. The miracle is that any victim ever tells anything.

The defendant immediately objected to this statement. The court overruled the objection but gave the following instruction, "Ladies and gentlemen, you're going to be instructed on what evidence is. And the best I recall, statements of counsel are not evidence. You decide this case on evidence. This is argument."

The defendant argues that this particular portion of the State's argument brought in issues that are broader than the defendant's guilt or innocence and inflamed the passions or prejudices of the jury. The State argues that these remarks were not improper and furthermore not inflammatory.

In State v. Goltz, 111 S.W.3d 1 (Tenn. Crim. App. 2003), this Court stated:

> Our supreme court has long recognized that closing argument is a valuable privilege for both the State and the defense and have allowed wide latitude to counsel in arguing their cases to the jury. State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1994). Trial judges in turn are accorded wide discretion in their control of those arguments, State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995), and this discretion will not be interfered with on appeal in the absence of abuse thereof. Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975). Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law. Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). We are mindful of the oft quoted principle that a prosecutor must be free to present his arguments with logical force and vigor, "[b]ut, while he may strike hard blows, he is not at liberty to strike foul ones." Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935).
>
> When argument is found to be improper, the established test for determining whether there is reversible error is whether the conduct was so improper or the argument so inflammatory that it affected the verdict to the Appellant's detriment.

Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965). In measuring the prejudicial impact of any misconduct, this court should consider: (1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984).

Goltz, 111 S.W.3d at 5.

The defendant objected to this statement by the prosecutor and was overruled. Therefore, we now look to see whether there was an abuse of discretion on the part of the trial court. The facts and circumstances of the case were that there was evidence, stemming from the testimony of the victim and her friend, as to the incident in question. The trial court undertook curative measures in its admonition to the jury that the prosecutor's statement was argument and not evidence. The State argues that the prosecutor was responding to accusations that A.G. was hiding the fact that she had previously lived down the street from the trailer in question. However, we are unable to determine this because the defendant's closing argument has not been included in the record. Additionally, we do not equate the prosecutor's argument about the secretiveness of child abuse victims with this victim not testifying that she formerly lived down the street. Surely the prosecutor could have found a more direct way to tell the jury it was an oversight rather than, without one iota of evidence before the jury, making a general statement describing the reluctance of victims of years of sexual abuse to tell about their victimization. We do not find other substantial errors in the record with regard to any improper conduct by the prosecutor. Finally, as we have stated above, there was insufficient evidence to support the defendant's conviction. Therefore, we can only conclude that the strength of the State's case is not enough to compensate for the inflammatory nature of the prosecutor's general statement concerning child sexual abuse. For this reason, we find that the trial court abused its discretion in allowing the argument in question.

## **CONCLUSION**

For the foregoing reasons, we reverse the judgment of the trial court, and reduce the conviction to attempted aggravated sexual battery. The case is remanded for entry of judgment in accordance with this opinion and for resentencing.

_____
JERRY L. SMITH, JUDGE